10-4298-cv
French v. New York State Department of Education

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the **Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand eleven.**

PRESENT:

JOSÉ A. CABRANES,
DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,
            *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMY FRENCH, a person with a disability, by her Parent, GARY FRENCH,

            *Plaintiff-Appellant,*

            -v.-                                              No. 10-4298-cv

NEW YORK STATE DEPARTMENT OF EDUCATION, FAYETTEVILLE-MANLIUS BOARD OF EDUCATION; Superintendent of Schools, DR. PHILIP[1] MARTIN; and Assistant Superintendent LISA MIORI-DINNEEN,

            *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[1] The Clerk of the Court is directed to amend the caption as indicated above.

**FOR APPELLANT:**    JOHN JOSEPH HENRY (Kathleen Copps DiPaola, *on the brief*), Whiteman Osterman & Hanna LLP, Albany, NY.

**FOR APPELLEES:**    JONATHAN B. FELLOWS, Bond, Schoeneck & King, PLLC, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff-appellant Amy French ("Amy") appeals from a judgment of the District Court granting summary judgment to the defendants on all of her claims. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal. We briefly repeat here those facts that are relevant to our decision.

Amy is an autistic individual who has been classified by the New York State Department of Education ("DoE") as a student with a disability under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* In mid-1995, just prior to the start of her sixth grade year, Amy moved into the school district of Fayetteville-Manlius (the "District"), where she began receiving special educational services pursuant to an Individualized Education Program ("IEP") developed by the District's Committee on Special Education ("CSE") in consultation with her father, Gary French ("French"). Amy apparently thrived under the IEP, but her progress was disrupted in May 1996 when it was determined that she was no longer a resident of the District. Although Amy's education in the District resumed around November 1996, after French commenced an appeal of the District's residency determination, her program was apparently no longer as beneficial as it had been under the 1995 IEP, and it ceased altogether at the end of that school year.

Amy and her father moved back into the District in September 1997, but French did not provide the District with proof of residency until December of that year. Shortly after French proved his residency to the District's satisfaction, the District scheduled a meeting of its CSE to begin developing a new IEP for Amy. However, French refused to attend the meetings, and instead demanded Amy be

subjected to a series of comprehensive physical and psychological evaluations before he would permit the CSE to develop a new IEP. For the same reason, he declined the home education that the CSE determined was necessary to help Amy make a transition back to the public school environment. The issue of the comprehensive evaluation was not resolved until March 1999, and French refused to permit the District to implement its IEP calling for homebound education throughout that time period.[2] After receiving approximately 50 hours of instruction under a new IEP during the 1999-2000 school year, Amy's schooling ceased entirely.

On March 5, 1998, French filed a complaint and petition for due process review before an impartial hearing officer ("IHO"). Due to a series of delays, no action was taken on the petition, and on March 12, 1999, French withdrew his complaint. At a February 2, 2000 meeting with the IHO, French withdrew his complaint.

On September 12, 2001, French filed a second complaint and petition for due process review requesting compensatory education. A hearing on the petition was held before IHO Stephen Aldersley on fourteen days over the course of several months, during which nine witnesses testified (three for the District and six for Amy) and 440 exhibits were filed. On May 30, 2002, as an interim measure, the IHO directed the District to commence homebound education as laid out in its October 1996 IEP, and directed the CSE to meet and discuss Amy's educational plan with French. On January 16, 2003, the IHO denied Amy's request for compensatory education, holding that, although the District had committed several procedural violations, it had on the whole demonstrated a substantial willingness to provide Amy with the free appropriate public education ("FAPE") required by the IDEA. The IHO's decision was affirmed by a State Review Officer ("SRO") on December 18, 2003. On March 31, 2003, during the pendency of the administrative review, Amy reached the age of 21, at which point she was no longer eligible to receive benefits under the IDEA. *Mrs. C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir. 1990); *see Honig v. Doe*, 484 U.S. 305, 318 (1988) (child "no longer entitled to the protections and benefits of the

[2] On April 17, 1998, the District filed a complaint with the State Department of Social Services, Children's Protective Service Unit, against French for educational neglect. Seven months later, on November 14, 1998, the Office of Children and Family Services informed French that the complaint against him had been determined to be unfounded.

[IDEA]" after reaching the age at which his or her home state considers the child to have completed school).

Having properly exhausted her state administrative remedies, *see Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987), Amy then brought suit in the Northern District of New York against the District, the DoE, and two District administrators in their individual and official capacities, pursuant to the IDEA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, the Rehabilitation Act, and Articles 65 and 89 of the New York State Education Law, seeking compensatory education and money damages. The defendants moved for summary judgment, which was granted on September 30, 2010 based on the administrative record.[3]

In granting judgment for the defendants the District Court affirmed the determination of the IHO and SRO that those of Amy's claims that arose before the 2000-2001 school year were time-barred. The District Court then dismissed the remainder of the claims because, *inter alia*, "[p]laintiff's lack of a formal education during this period was not due to the District's unwillingness to provide her with a FAPE, but because Plaintiff's father repeatedly demonstrated an unwillingness to permit Plaintiff to attend school pursuant to any IEP in place." *French v. N.Y. State Dep't of Educ.*, No. 04-CV-434(FJS/ATB), 2010 WL 3909163, at *6 (N.D.N.Y. Sept. 30, 2010).

DISCUSSION

A. *Standard of Review*

We review *de novo* the District Court's grant of summary judgment. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009). In undertaking this review we are mindful that the IDEA offers no "invitation to the courts to substitute their own notions of sound educational policy

---

[3] Amy appeals the District Court's grant of summary judgment based solely on the administrative record. Summary judgment in an IDEA case "involves more than looking into disputed issues of fact; rather, it is a 'pragmatic procedural mechanism' for reviewing administrative decisions." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (quoting *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)). Accordingly, the District Court is not required to grant additional discovery, 20 U.S.C. § 1415(i)(2)(C), but may conduct its own evidentiary hearing, *see T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("Though the court must show deference to administrative board findings, the court is also empowered to conduct an independent review of the record as a whole and even hear additional evidence."); *Lillbask*, 397 F.3d at 83 n.3 ("Though the parties . . . may call the procedure 'a motion for summary judgment' . . . the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

for those of the school authorities which they review," and that courts "lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206, 208 (1982) (internal quotation marks omitted). Accordingly, our deferential inquiry is "twofold: first, [we review] the state's compliance with IDEA procedures and, second, [we determine whether] the IEP created through those procedures was 'reasonably calculated to enable the child to receive educational benefits.'" *T.Y. v. N.Y. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (quoting *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)).[4]

B.    *The IDEA Claim*

A disabled student who has attained the age of 21 is generally no longer eligible to receive state educational services under the IDEA. *See* 20 U.S.C. § 1412(a)(1)(A). However, a form of "prospective equitable relief," *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008), known as compensatory education remains available to such an individual if a "gross procedural violation" has resulted in the student's complete deprivation of a FAPE during her period of eligibility. *Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir. 1994) (citing *Mrs. C.*, 916 F.2d at 75) (quotation marks omitted). A plaintiff seeking compensatory education in such circumstances must show by a preponderance of the evidence that she has suffered a gross procedural violation. *See Hendrick Hudson*, 458 U.S. at 206; *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Ctrl. Sch. Dist.*, 553 F.3d 165, 172-173 (2d Cir. 2009). Therefore, the threshold issue on appeal is whether the District committed one or more gross procedural violations that deprived Amy of a FAPE.

It is clear from the administrative record that the District did commit several procedural violations.[5] However, addressing this issue, the District Court determined that "Plaintiff's lack of a

---

[4] Although Amy also appeals the District Court's determination that a large portion of her complaint was time-barred, for the purpose of this appeal we assume, without deciding, that the entirety of the complaint was timely.

[5] According to the IHO, these violations included the omission of required information from several notices of meeting issued to French by the CSE, a failure to properly form a transition plan for Amy's post-secondary vocational or educational placement, and the District's unauthorized alteration of the October 1996 IEP to reflect placement in special education classes (as opposed to the May 1996 IEP which reflected placement in a seventh grade curriculum). With regard to the latter, the IHO found that French had failed to object to the violation, and indeed had repeatedly requested

formal education during [the period at issue] was not due to the District's unwillingness to provide her with a FAPE, but because Plaintiff's father repeatedly demonstrated an unwillingness to permit Plaintiff to attend school pursuant to any IEP in place." *French*, 2010 WL 3909163 at \*6 (N.D.N.Y. Sept. 30, 2010). The District Court therefore denied Amy's claim for "prospective equitable relief" in the form of compensatory education. We agree with the District Court, as well as with the IHO and the SRO, that the procedural violations, "by themselves, or in toto," *id.* at \*3 (quotation marks omitted), were not gross procedural violations and cannot be said to have deprived Amy of a FAPE. *See A.C. ex rel. M.C.*, 553 F.3d at 172 (where the preponderance of the evidence indicated that the IEP "adequately addressed" the student's needs, the presence of a procedural violation did not invalidate the IEP and thereby deprive the student of a FAPE).

In our view, the District Court did not err in finding that the primary fault for the gap in Amy's education lies with her father and not with the District. As discussed above, French repeatedly rescheduled meetings and refused to allow special education teachers sent by the District to meet with Amy, thereby delaying the development and implementation of the District's IEPs. He refused to participate in CSE meetings or to recognize IEPs drafted throughout 1998 and 1999 because he insisted that the District conduct a comprehensive evaluation of Amy—an evaluation French repeatedly obstructed when the District later sought to conduct it. Further, although the June 23, 1999 IEP was declared invalid by the DoE, it was only one of several IEPs developed by the CSE that were in effect during the period between 1996 and 2003.[6] If French had availed himself of those IEPs, Amy would not have been deprived of the opportunity for a FAPE.

It is clear from the record that French, by engaging in the obstructionist tactics discussed above, substantially prevented the District from implementing properly-developed IEPs that it was ready and willing to implement, and from developing revised IEPs that could have assuaged his concerns. *Cf.*

that the District implement the offending IEP, and determined that the procedural violation did not merit an award of compensatory education.

[6] Further, as noted by the IHO, once the June 23, 1999 IEP was invalidated, the District was in constant communication with the DoE to ensure that Amy's new IEP complied with its directives.

*Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co.*, 324 U.S. 806, 814 (1945) (the doctrine of "[un]clean hands . . . closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."). We hold that it was the actions of Amy's father, rather than any procedural violation that may have been committed by the District, that prevented Amy from receiving a FAPE, and that she is therefore not entitled to the prospective equitable remedy of compensatory education.

C.      *The Remaining Claims*

Amy further alleges that the District Court improperly dismissed her ADA, Rehabilitation Act, § 1983, and state law claims. We disagree. Even if we were to conclude that the District had violated the IDEA, such a violation, without more, would be insufficient to support a claim of disability-based discrimination under the ADA or Section 504 of the Rehabilitation Act. *See Wenger v. Canastota Ctrl. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997), *aff'd mem.*, 208 F.3d 204 (2d Cir. 2000) ("[S]omething more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, *i.e.*, a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment."). Specifically, Amy fails to show that the alleged "discrimination" is anything more than a rehashing of her allegation that the defendants failed to provide her with a FAPE. To make out a prima facie case under either of these statutes, a plaintiff must show "'(1) that she is a qualified individual with a disability, (2) that the defendants are subject to [the relevant statute]; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.'" *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.), *corrected*, 511 F.3d 238 (2d Cir. 2004). Amy has adduced no evidence that would support an inference of such prima facie discrimination. Accordingly, we affirm the dismissal of her discrimination claims under the ADA, Rehabilitation Act, and New York law.

As for Amy's § 1983 claim, it lacks any factual basis other than the alleged IDEA violations and the related allegation of discrimination. We therefore affirm the District Court's dismissal of this claim as well. *See French*, 2010 WL 3909163 at *10 n.6.

CONCLUSION

We have considered all of the appellant's arguments on appeal and find them to be without merit. Accordingly, for substantially the reasons contained in the District Court's Memorandum and Order of September 30, 2010, we AFFIRM the judgment of the District Court.


FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court