**M.H. and S.H., individually and on behalf of S.H., Plaintiffs–Appellants,**

v.

**PELHAM UNION FREE SCHOOL DISTRICT, Defendant–Appellee.**

15 Civ. 00060 (RMB)

United States District Court, S.D. New York.

Signed March 7, 2016

Gary S. Mayerson, Tracey Spencer Walsh, Jacqueline Marie Devore, Jean Marie Brescia, Maria Christine McGinley, Mayerson & Associates, New York, NY, for Plaintiffs–Appellants.

Stephanie Marie Roebuck, Keane & Beane, P.C., Suzanne Elizabeth Volpe, Keane & Beane, White Plains, NY, for Defendant–Appellee.

## DECISION & ORDER

Hon. Richard M. Berman, United States District Judge.

### I. Background

On January 6, 2015, M.H. and S.H. ("Parents") individually and on behalf of their son, S.H. ("S.") (collectively, "Plaintiffs") commenced this action pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq., against the Pelham Union Free School District ("Defendant" or "Pelham"). Plaintiffs appeal from adverse administrative decisions of the New York State Education Department Impartial Hearing Officer ("IHO") and State Review Officer ("SRO"). They request that the Court grant: (1) reimbursement for S.'s tuition at the Children's Academy, a non-public school in New York City, for the 2013–14 school year (described by Plaintiffs as their "main argument"[1]), and (2) "compensatory education" relief for the 2012–13 school year, notwithstanding that in their complaint, filed September 9, 2013 ("Due Process Complaint"), Plaintiffs did not mention 2012–13 (see J.A. Ex. P–A at 2, 9, 10). (See Compl., dated Jan. 6, 2015 ("Compl."), at 2–4.)[2]

The parties agree that: (i) S. suffers from a "developmental disability" and has "severe language impairment," "attention deficit hyperactivity disorder," and "motoric (fine and gross motor) delays" (id. at 1; Answer, dated Feb. 19, 2015 ("Answer"),

---

1. See Hr'g Tr., dated January 26, 2016 ("1/26/16 Hr'g Tr."), at 4:2–3.

2. At oral argument before the Court on January 26, 2016, Plaintiffs' counsel, Gary S. Mayerson, stated that he generally includes "catchall" language, i.e. "a claim for compensatory education award for any and all educational services that [the client] was entitled to but did not receive," in his due process complaints in order to avoid waiving potential claims:

[Mayerson]: [W]e said, a claim for compensatory education award for any and all educational services that [S.] was entitled to but did not receive.... If we don't plead [this], somebody, some school district is going to say, well, you didn't plead it so, therefore, you can't even go for it....

[Court]: So this is a catchall that you think is adequate pleading?

[Mayerson]:.... It is better than a catchall, because it refers to the compensatory relief that we're seeking for services that he's entitled to that he doesn't get.

[Court]:.... I'm just asking you if it's definitive enough for purposes of ... notice? A complaint is supposed to put people on notice.

[Mayerson]: We believe that ... it is.... I've learned from some bad knocks and some bad experience that we better have that ... [catchall] language in there about, we want to be recompensed for services we were entitled to but did not receive.

(1/26/16 Hr'g Tr. at 10:25–11:2, 13:8–22, 14:16–19, 16:22–17:2.)

at 1; Pls.' Rule 56.1 Statement, dated Apr. 17, 2015 ("Pls.' 56.1"), ¶¶ 1, 3, 5; Def.'s Rule 56.1 Response Statement, dated May 15, 2015 ("Def.'s 56.1"), ¶¶ 1, 3, 5); **(ii)** S. attended a special education class in public elementary school in Pelham, a school district required under the IDEA to provide a "free appropriate public education" ("FAPE") to children with disabilities, during the 2010–11 school year (Pls.' 56.1 ¶ 14; Def.'s 56.1 ¶ 14); **(iii)** S. participated in Pelham's academic communication and experiential learning program ("A.C.E.Program"), a "class for students with various handicapping conditions," during the 2011–12 and 2012–13 school years (Pls.' 56.1 ¶¶ 15, 18 (internal quotation marks omitted); Def.'s 56.1 ¶¶ 15, 18); **(iv)** Pelham's Individualized Education Programs ("IEPs") for S. included, among other things, speech and occupational therapy sessions (Pls.' 56.1 ¶¶ 4, 6, 79–80, 104; Def.'s 56.1 ¶¶ 4, 6, 79–80, 104), some of which sessions were "missed" during the 2012–13 school year[3] (Pls.' 56.1 ¶¶ 83, 85–86, 105–107; Def.'s 56.1 83, 85–86, 105–107); **(v)** on June 19, 2013, Pelham's Committee on Special Education met to develop an IEP for S. for the 2013–14 school year and recommended that S. continue in Pelham's A.C.E. Program (Pls.' 56.1 ¶¶ 109, 119; Def.'s 56.1 ¶¶ 109, 119); **(vi)** at the June 19, 2013 IEP meeting, Plaintiffs were present, along with their educational consultant, Dr. Lydia Soifer, and "expressed their concern that S. was not making progress in Pelham's program" (Pls.' 56.1 ¶¶ 110, 112; Def.'s 56.1 ¶¶ 110, 112) (*but see infra* p. 676-77 **where S.'s father is quoted as saying that S. made "great progress" during the 2011–12 school year** (J.A. Ex. D–77 (emphasis added))); and **(vii)** Plaintiffs rejected Pelham's A.C.E. Program and unilaterally enrolled S. in the Children's Academy for the 2013–14 school year (Pls.' 56.1 ¶ 125; Def.'s 56.1 ¶ 125).

Principal points upon which the parties appear to disagree include: **(i)** whether S. progressed or declined academically during three years (2010–11, 2011–12, 2012–13) at Pelham (*see* 1/26/16 Hr'g Tr. at 4:2–8, 18:16–21:22; Pls.' 56.1 ¶¶ 51, 54, 67, 70–72, 76; Def.'s 56.1 ¶¶ 51, 54, 67, 70–72, 76); and **(ii)** whether procedures existed for Plaintiffs to pursue their claim for missed sessions in 2012–13, including the filing of

---

**3.** Pelham's IEP for S. for the 2012–13 school year included four sessions of speech therapy and three sessions of occupational therapy, "per six-day cycle." (Pls.' 56.1 ¶¶ 4, 6; Def.'s 56.1 ¶¶ 4, 6.) Plaintiffs contend that Pelham "failed to fulfill" thirty-six percent of speech therapy sessions and thirty percent of occupational therapy sessions during 2012–13, "due to school trips" or "scheduled half-days of school, scheduled parent-teacher conference days, [the therapist's] unavailability due to illness or attending meetings, testing, and snow and other weather emergencies." (Pls.' 56.1 ¶¶ 16–17, 82, 86, 105.) They contend also that these missed sessions "likely exacerbated S.'s inability to make meaningful progress" in the 2012–13 school year. (Pls.' Mem. in Supp. of Mot. for Modified *De Novo* Review, dated Apr. 17, 2015 ("Pls.' Mem."), at 12 (internal quotation marks omitted); *see also* 1/26/2016 Hr'g Tr. at 6:11–19.)

The Defendant counters that it had no notice of Plaintiffs' application for 2012–13 school year benefits because Plaintiffs' Due Process Complaint explicitly stated that it "pertain[ed] to the 2013–2014 school year," and Pelham "did not think [it] needed to defend the '12/13 school year" at the due process hearing. (1/26/2016 Hr'g Tr. at 22:8–25, 25:3–4.) The Defendant also argues that S. **"was making meaningful educational progress in [Pelham's] program,"** during the 2012–13 school year. (*Id.* at 18:8–17, 21:16–17; *see also infra* pp. 676-77; Def.'s Mem. in Opp'n to Pls.' Mot. for Modified *De Novo* Review, dated May 15, 2015 ("Def.'s Mem."), at 9.) The Defendant "disputed" Plaintiffs' percentages as to missed sessions. (Def.'s 56.1 ¶¶ 16–17, 82, 86, 105.) The Defendant also contends that a school district does not have an obligation to provide services on dates "when school is closed," including, among other things, snow and weather emergencies. (*Id.*)

a timely supplemental due process complaint (*see* 1/26/16 Hr'g Tr. at 23:9–12, 24:5–7, 27:16–20; Def.'s Mem at 5–6; Pls.' Reply Mem. in Supp. of Mot. for Modified *De Novo* Review, dated May 29, 2015 ("Pls.' Reply"), at 3).

As noted, on September 9, 2013, Plaintiffs submitted their Due Process Complaint to Pelham pursuant to the IDEA and New York State Education Law, "request[ing] a due process hearing ... to adjudicate ... relief the hearing officer deems appropriate pertaining to the 2013–2014 school year." (J.A. Ex. P–A at 2.) The Due Process Complaint contended that "[p]rocedurally and substantively, [Pelham] deprived [S.] of a FAPE ... for the 2013–2014 school year." (*Id.* at 9.) It also stated that: "For the 2013–2014 school year, the reimbursement, compensatory and/or prospective funding award should cover ... tuition and costs for placement at Children's Academy ... [and] a compensatory education award for any and all educational services [S.] was entitled to but did not receive." (*Id.* at 10.) It did not, as noted, mention the 2012–13 school year. (*Id.* at 2, 9, 10; *see also* 1/26/16 Hr'g Tr. at 9:20–22, 26:16–27:5.)

The IHO conducted an extended hearing over nine days between December 9, 2013 and May 30, 2014, during which fourteen witnesses, including S.'s father and Plaintiffs' expert, Dr. Soifer, testified. (J.A. Ex. II (Findings of Fact and Decision, No. 79949, dated Aug. 27, 2014) at 1–2.) Plaintiffs, who were represented by counsel at the hearing, do not challenge the SRO's observation that "the impartial hearing was conducted in a manner consistent with the requirements of due process." (J.A. Ex. I (Application of a Student with a Disability, Appeal No. 14–152, dated Nov. 4, 2014) at 9.) Plaintiffs presented eight witnesses, including S.'s father and Plaintiffs' expert, and the Defendant presented six witnesses. (J.A. Ex. II at 2.) Witnesses were subject to cross examination. (*See, e.g.,* Tr. at 317:13–14.) "Multiple subpoena requests were made and granted" by the IHO. (J.A. Ex. II at 2.) Plaintiffs subpoenaed Kim Talmor, who had been S.'s occupational therapist at Pelham, as a witness. (Compl. at 4; J.A. Ex. II at 2.) On August 27, 2014, the IHO dismissed Plaintiffs' Due Process Complaint. (J.A. Ex. II at 26.) The IHO determined that, for the 2013–14 school year, Pelham "provided [S.] a FAPE through its IEP dated June 19, 2013 and its corresponding [public] school placement." (*Id.* at 25.) The IHO also determined that for the 2012–13 school year, "there is no evidence in the record to suggest that [S.'s] failure to receive related services in 2012–2013 rose to the level of FAPE denial." (*Id.* at 16.)

On November 4, 2014, following an appeal by Plaintiffs, the SRO "affirmed the IHO's conclusion that [Pelham] demonstrated it offered [S.] a FAPE for the 2013–14 school year," citing, among other things, that "[S.] made progress during the 2012–13 school year"; that "the June 2013 IEP addressed [S.'s] behavioral needs"; and that the "parents and their educational consultant were afforded participation" in the June 19, 2013 IEP meeting. (J.A. Ex. I at 3, 9–10.) The SRO also determined that, with respect to any missed sessions during the 2012–13 school year, Plaintiffs' "due process complaint notice cannot be reasonably read to include the issues raised *sua sponte* by the IHO regarding [Pelham's] implementation of [S.'s] IEP during the 2012–13 school year." (*Id.* at 8.) The SRO observed that the Due Process Complaint in several places "explicitly confined the parents' challenges ... to the 2013–14 school year" and that 2012–13 school year issues "were not identified as issues the parent[s] sought to resolve through the impartial hearing process and

the IHO's findings on these issues must be annulled." (*Id.* at 8 & n.8.)[4]

On April 17, 2015, Plaintiffs moved in this Court for "a modified *de novo* review and adjudication on the merits," seeking to reverse the rulings of the IHO and the SRO or, alternatively, "remand to the IHO, to adjudicate those claims that the hearing officer did not adjudicate." (Pls.' Mot. for Modified *De Novo* Review, dated Apr. 17, 2015, at 1-2; *see also* Dkt. # 18 (Plaintiffs' "Motion for Summary Judgment or Modified de novo Review").) Plaintiffs argue that: (1) The "factual record of S.'s lack of educational progress during three years in Pelham's program demonstrat[es] that the continuation of that program for an additional school year [*i.e.* 2013-14] was not 'reasonably calculated' to permit S. to receive a FAPE." (Pls.' Mem. at 13 (capitalization omitted).) Plaintiffs also state that Pelham's " 'procedural' failures, in creating the June 2013 IEP ... resulted in a denial of FAPE for S." (*id.* at 17); and that "Children's Academy was an appropriate ... placement for S." (*id.* at 20 (capitalization omitted)); and (2) The IHO and SRO erred "by failing to adjudicate [S.'s] pleaded claim for 'compensatory education' relief" for the 2012-13 school year (*id.* at 1).[5]

On May 15, 2015, the Defendant opposed Plaintiffs' motion, arguing that: (1) The "evidence in the Record demonstrates that ... the 2013-14 IEP was reasonably calculated to provide S. with an educational benefit in the least restrictive environment" and that the IHO and SRO decisions "are entitled to due deference." (Def.'s Mem. at 10.) The Defendant also contends that the "SRO, like the IHO, properly determined that any procedural violations allegedly committed by [Pelham] did not rise to the level of denying S. a FAPE" (*id.*); that the "Plaintiffs did not prove that Children's Academy is appropriate for S." (*id.* at 17 (capitalization omitted)); and (2) Plaintiffs' Due Process Complaint "only claims deficiencies *relating to the 2013-2014 school year*" and did not "provide 'fair' ... notice to [Pelham] that it would seek to adjudicate claims stemming from the 2012-13 school year" (*id.* at 4, 7).

On May 29, 2015, Plaintiffs filed a Reply. (*See* Pls.' Reply.)

On January 26, 2016, the Court heard helpful oral argument from the parties. (*See* 1/26/16 Hr'g Tr.)

**For the reasons set forth below, Plaintiffs' motion for summary judg-**

---

**4.** Plaintiffs state that they did not learn of the 2012-13 missed sessions "until the hearing was underway" and that, under the IDEA and implementing regulations, a due process complaint cannot be amended (absent the other party's consent) after a hearing has started. (*See* 1/26/16 Hr'g Tr. at 16:4-21; Pls.' Mem. at 9-10.) The Defendant counters (persuasively) that Plaintiffs, once they learned of any 2012-13 missed sessions, "always ha[d] the opportunity to file a new impartial hearing demand to cover the '12/13 school year ... and then the [IDEA implementing] regulations allow for a new due process proceeding ... and a consolidation to occur before the same hearing officer" for the proceeding covering the 2013-14 school year. (*See* 1/26/16 Hr'g Tr. at 23:9-12, 24:5-7; Def.'s Mem. at 5-6); *see also infra* p. 680-81.

**5.** *See* 1/26/16 Hr'g Tr. at 9:20-11:2, 26:18-27:5 (emphasis added):

[Mayerson]: As to the comp[ensatory] ed[uca-tion] claim, we pleaded it appropriately. . . . I think that we gave [Pelham] notice in our pleading sufficiently by saying we want there to be compensatory education for all services that—
[Court]: What exactly did you say?
[Mayerson]: . . . . [W]e said, a claim for compensatory education award for any and all educational services that [S.] was entitled to but did not receive. . . . **We didn't say what year.**
[Court]: . . . . You said 2013 and forward.
[Mayerson]: **Right.**

ment is denied and judgment is entered for the Defendant.[6]

## II. Legal Standard

▮ "A motion for summary judgment in the IDEA context is 'in substance an appeal from an administrative determination, not a summary judgment.'" *E.E. v. New York City Dep't. of Educ.*, 2014 WL 4332092, at *4 (S.D.N.Y. Aug. 21, 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005)). "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir.2014) (internal quotation marks omitted). "The district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Hardison v. Bd. of Educ. of the Oneonta City School Dist.*, 773 F.3d 372, 385–86 (2d Cir.2014) (internal quotation marks and brackets omitted).

▮ "In undertaking this independent review, [courts] are ... restrained by our lack of specialized knowledge and educational expertise; we must defer to the administrative decision particularly where the state officer's review has been thorough and careful." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 138–39 (2d Cir.2013) (internal quotation marks and brackets omitted). "While we will not rubber stamp administrative decisions, we remain equally mindful that we cannot substitute our own notions of

sound educational policy for those of the school authorities under review." *Id.* at 139 (internal quotation marks omitted).

▮ "The party requesting the due process hearing shall not be allowed to raise issues that were not raised in the due process complaint notice." *T.M. ex rel. A.M. v. Cornwall Cent. School Dist.*, 752 F.3d 145, 170 (2d Cir.2014) (internal quotation marks, ellipses, and brackets omitted) (citing 20 U.S.C. § 1415(f)(3)(B)). "District courts in this circuit have held that issues not raised in due process complaints are foreclosed from review in federal court, absent agreement from the opposing party." *C.F.*, 746 F.3d at 78. "[T]he waiver rule is not to be mechanically applied. The key to the due process procedures is fair notice and preventing parents from sandbagging the school district" after submission of the due process complaint. *Id.* (internal quotation marks and brackets omitted).

## III. Analysis

### (1) Both the IHO and the SRO Found That Pelham Offered S. a FAPE for the 2013–14 School Year

▮ "To decide whether an IEP complies with the IDEA, ... [a court] examines the substantive adequacy of the IEP by asking whether it was reasonably calculated to enable the child to receive educational benefits." *T.M.*, 752 F.3d at 160 (internal quotation marks omitted). Also, it "examines the procedural adequacy of the IEP, asking whether the state has complied with the procedures set forth in the IDEA." *Id.* (internal quotation marks omitted).[7]

---

6. The parties have waived a trial. (*See* Letter from Stephanie M. Roebuck to Hon. Richard M. Berman, dated Feb. 5, 2015, at 1 ("The parties ... are in agreement that a trial ... will not be required"); *see also* Mar. 2, 2015 Minute Entry.)

**Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

7. "[T]he parents' primary argument on appeal is substantive. [The Court] therefore consider[s] their arguments for substantive inadequacy first before turning to the asserted

### Pelham's IEP for 2013–14 Was Substantively Adequate

 Plaintiffs challenge the substantive adequacy of Pelham's A.C.E. Program for 2013–14. (Pls.' Mem. at 14–17.) They argue, among other things, that "[s]tandardized testing showed that S. was steadily falling behind" and "S., after attending Pelham's school for three years, should have progressed in reading and ... required different educational programming than Pelham had provided." (*Id.* at 15.) They state, among other things, S.'s IQ score "declined from 65 in 2010 to 50 in 2013" and his Wide–Range Achievement Test ("WRAT") scores in reading were "78 in 2010–2011, 74 in 2011–2012, and 74 in 2012–2013" and his scores in math were "64 in 2010–2011, 65 in 2011–2012 and 58 in 2012–2013." (*Id.* (emphasis omitted).)

The Defendant counters that "evidence in the Record ... demonstrates that S. made ... steady progress" at Pelham. (Def.'s Mem. at 14; *see also supra* p. 671 n. 3 & *infra* p. 676-77 (J.A. Ex. D–77 (where S.'s father is quoted as saying S. made "great progress" during the 2011–12 school year)).) The Defendant points to S.'s improvement in reading under the Preventing Academic Failure ("PAF") educational methodology; S.'s progress in "single digit addition and subtraction" and "telling time"; and Pelham's 2012–13 Progress Report for S. which indicated that out of twenty-four IEP goals, "S. achieved nine IEP goals and made satisfactory or gradual progress on ten goals." (Def.'s Mem. at 15–16.) The Defendant also contends that IQ "measures intellectual ability, not academic progress" (*id.* at 15), and that S.'s WRAT scores in spelling were "73 in 2011, 70 in 2012, and 77 in 2013" (1/26/16 Hr'g Tr. at 21:4–6).

After a thorough due process hearing, including, as noted, eight witnesses for Plaintiffs and six witnesses for the Defendant, the IHO concluded in a 25–page decision that Pelham's 2013–14 IEP was "reasonably calculated to enable [S.] to receive educational benefits." (J.A. Ex. II at 13, 25.) The IHO determined that, while at Pelham, S. progressed "from using a Level B text reader to a Level D text," from reading "40 plus [consonant-vowel-consonant] words to ... most [e]very [consonant-vowel-consonant] word encountered," and from not being able to read "word blends" to reading "words beginning with 'th' and 'sh' in isolation." (*Id.* at 7, 24.) The IHO also found that S. improved his WRAT spelling score from 2012 to 2013, gained mathematical ability to do addition without "using manipulatives," "went from not being able to use paper and pencil to being able to write within smaller boxes," "improve[d] in keyboarding" and being "able to type two sentences," and also improved in telling time "to the half hour." (*Id.* at 5, 7, 23–24.) The IHO further concluded that S. "made progress in terms of his [IEP] goals, including following multi-step directions, answering reading comprehension questions when reading a leveled text, in regard to decoding goals, and in regard to math goals." (*Id.* at 8.) The IHO observed that "it is important to note that [S.] has significant cognitive delays, making more traditional assessment difficult." (*Id.* at 23.)

In a (single-spaced) ten-page decision, the SRO affirmed the IHO's conclusions.

procedural violations." *T.M.*, 752 F.3d at 161.

"Procedural violations will entitle parents to [tuition] reimbursement only if they impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a FAPE to the parents' child, or caused a deprivation of educational benefits." *Id.* at 160 (internal quotation marks and brackets omitted).

(J.A. Ex. I at 9.) The SRO found that the "IHO accurately recounted the facts of the case, addressed the specific issues identified in the parent's due process complaint notice, and set forth the proper legal standard ..., applying that standard to the facts at hand." (*Id.*) The SRO also determined that the "decision shows that the IHO carefully considered the testimonial and documentary evidence presented by both parties and, further, that he weighed the evidence and properly supported his conclusions." (*Id.*) The SRO concluded that, upon independent review of the record, Pelham provided a FAPE to S. for the 2013–14 school year. (*Id.*)

 The Court independently has reviewed the record, including testimony of Plaintiffs' educational expert, S.'s father, and Pelham and Children's Academy representatives (*i.e.* teachers, administrators, therapists, and a psychologist); evaluation reports; and S.'s IEPs and standardized test results. The Court finds that the IHO's (and SRO's) rulings that Pelham's 2013–14 IEP offered S. a FAPE are supported by a preponderance of the evidence and are entitled to deference. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 258 (2d Cir.2012); *see also Hardison*, 773 F.3d at 387 ("[T]he SRO's conclusion was sufficiently supported by the record to merit deference."). Among other things, S.'s progress in spelling, reading, math, and writing during the 2011–12 and 2012–13 school years in the A.C.E. Program demonstrates that the A.C.E. Program was likely to yield progress, not regression, for the 2013–14 school year. The IDEA "calls only for selection of a program that provides a basic floor of opportunity, that is likely to produce progress, not regression." *C.F.*, 746 F.3d at 72 (internal quotation marks omitted). It "does not require that a child be provided with the optimal programmatic alternative" or "guarantee any particular level of education." *Id.*; *see also E.C. v. Bd. of Educ.*

*of City School Dist. of New Rochelle*, 2013 WL 1091321, at \*21 (S.D.N.Y. March 15, 2013) ("Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy.") (quoting *Cerra v. Pawling Cent. School Dist.*, 427 F.3d 186, 195 (2d Cir.2005)).

The Court's independent review also shows that the IHO's and SRO's determinations that S. progressed at Pelham is supported by a preponderance of the evidence. *M.H.*, 685 F.3d at 258. Pelham's 2012–13 Progress Report states that, out of the twenty-four goals (in study, reading, writing, math, speech/language, social, motor, and basic cognitive/daily living skills) in S.'s 2012–13 IEP, S. "achieved" ten goals; that he was "progressing satisfactorily" toward six goals; that he was "progressing gradually" toward four goals; and that he was "progressing inconsistently" toward three goals. (J.A. Ex. P–X.) S. "achieved" all of the (three) goals in reading. (*Id.* at 3.) While the record does include some declining test scores, the "evidence indicate[s] [the student] made steady progress in his District education." *Viola v. Arlington Central School Dist.*, 414 F.Supp.2d 366, 382 (S.D.N.Y.2006); *see also Gavrity v. New Lebanon Cent. School Dist.*, 2009 WL 3164435, at \*31 (N.D.N.Y. Sept. 29, 2009) (where forms containing the IEP's annual goals indicated that the student was "progressing satisfactorily," "although [the student] did not meet the objectives").

Pelham's evaluation of S.'s development for the 2013–14 IEP concluded that S. "has improved in his [word] decoding," that S.'s "written work has improved given repetition and a tilt board," and that S. "continues to show growth in his ability to complete mathematical tasks with more independence." (J.A. Ex. P–C at 4–5, 7.)

S.'s teacher during the 2012–13 school year testified at the due process hearing before the IHO that S. progressed from a Level 1, at which he "review[ed] ... the simple [consonant-vowel-consonant] words and the letter sounds," to "around Level 90," at which he reviewed "word blends" such as "beginning blends" and "ending blends," under the PAF reading methodology.[8] (Tr. at 1789:15–1790:13.)

 While the IHO recognized that there was some conflicting testimony between S.'s 2012–13 teacher at Pelham and S.'s 2013–14 teacher at the Children's Academy regarding S.'s reading level, the IHO "credit[ed]" the Pelham teacher's testimony. (J.A. Ex. II at 24.) "District courts are not to make 'subjective credibility assessments,' " *M.H.*, 685 F.3d at 240 (internal quotation marks and brackets omitted), because "the initial hearing officer ... was in the best position to assess credibility," *B.P. v. New York City Dep't of Educ.*, 634 Fed.Appx. 845, 849, 2015 WL 9487873, at *3 (2d Cir. Dec. 30, 2015) (summary order).

Additionally, as mentioned, notes in the record of a March 26, 2013 parent-teacher conference reflect that **S.'s father indicated that S. made "great progress" during the 2011–12 school year.** (J.A. Ex. D–77 (emphasis added).) Amanda Altieri, Pelham's speech therapist, who attended the March 26, 2013 parent-teacher conference testified that "[S.'s father] had mentioned [for] the year prior to that current school year, that S. had made a lot of progress." (Tr. at 685:8–10.) The IHO also found that "[d]uring the 2011–2012 school year, [S.'s] father felt that there was great progress." (J.A. Ex. II at 6.) S.'s 2011–12 teacher testified that S. "made tremendous gains in all academic areas" during the 2011–12 school year. (Tr. at 292:3–7.) S.'s 2012–

13 teacher also testified that "progress was made" toward S.'s IEP goals during the 2012–13 school year. (Tr. at 613:2–4.) The hearing record as a whole supports the conclusion that the student made meaningful progress. *H.W. v. New York State Educ. Dep't*, 2015 WL 1509509, at *4 (E.D.N.Y. March 31, 2015); *see also Cerra*, 427 F.3d at 196; *Viola*, 414 F.Supp.2d at 383.

While S.'s WRAT score in math decreased by 7 points (to 58) from 2012 to 2013, his spelling score increased by 7 points (to 77) and his reading score stayed constant. (Pls.' 56.1 ¶ 50; Def.'s 56.1 ¶ 50.) The parties agree that WRAT "is a test of academic achievement and a standardized measure to enable educators to monitor academic progress" (Pls.' 56.1 48; Def.'s 56.1 ¶ 48). Further, one of S.'s teachers testified that "[b]ecause [S.] maintained [his WRAT reading score in 2012–13 from 2011–12], it means, age-wise, he had to know more information" and "his score would have dropped if he had not made progress." (Tr. at 334:23–335:10.) Defendant's witness, Pelham school psychologist, Dr. Lauren Carner, appeared to disagree with Plaintiffs' expert, Dr. Lydia Soifer, as to whether S.'s disability might explain a declining test score. (*See id.* at 822:3–823:16, 905:6–9, 1165:20–25, 1180:4–24.) But "[d]istrict courts ... cannot choose between the views of conflicting experts on controversial issues of educational policy in direct contradiction of the opinions of state administrative officers who had heard the same evidence." *M.H.*, 685 F.3d at 240.

The Court finds that the record overall supports the IHO's and SRO's determination that Pelham's continued placement of S. in the A.C.E. Program offered a FAPE for the 2013–14 school year.

---

8. "PAF is a research-based, multisensory reading instruction program that consists of a strict and comprehensive sequential approach to teach decoding, spelling and reading comprehension using a defined and specific protocol." (Pls.' 56.1 ¶ 24; Def.'s 56.1 ¶ 24.)

### Pelham's IEP for 2013–14 Was Procedurally Adequate

■ Plaintiffs assert, among other things, that Pelham's " 'procedural' failures" in creating S.'s 2013–14 IEP "rise to the level of a FAPE deprivation." (Pls.' Mem. at 17.) They argue that (1) "[Pelham] should have considered an FBA ['functional behavioral assessment'] of S."; (2) Pelham "fail[ed] ... to consider ... a continuum of educational programs ... and [have] any discussion with S.'s parents about other options" during the June 19, 2013 IEP meeting; and (3) notwithstanding "S.'s difficulties climbing stairs," "Pelham did not consider offering a school building that had an elevator for S." (*Id.* at 17–19.)

The Defendant counters that "as the IHO and SRO both found, [Pelham] adequately complied with the procedural requirements of the IDEA." (Def.'s Mem. at 10 (capitalization omitted).) Among other things, (1) S. did not "engage[ ] in behaviors that ... require[d] the development of an FBA" and "the supports listed on S.'s IEP ... adequately addressed S.'s behavioral issues"; (2) Pelham is not required to "offer a continuum of placements," and "Plaintiffs, accompanied by their ... consultant, Lydia Soifer, attended the June 19, 2013 [Committee on Special Education] meeting at which the 2013–14 IEP for S. was developed, and they and Dr. Soifer actively participated in the meeting"; and (3) Pelham "specifically noted S.'s progress in successfully navigating stairs." (*Id.* at 11–13.)

■ Following an independent review, the Court finds, as did the IHO and SRO, "that the IEP was procedurally adequate." *R.B. v. New York City Dep't. of Educ.,* 15 F.Supp.3d 421, 434 (S.D.N.Y. 2014); *T.G. ex rel. R.P. v. New York City Dep't of Educ.,* 973 F.Supp.2d 320, 342 (S.D.N.Y.2013). "[A]ny deficiencies ... did not impede [S.'s] right to a FAPE, did not significantly impede the parents' opportunity to participate in the decision-making process, and did not cause a deprivation of educational benefits," *D.A.B. v. New York City Dep't of Educ.,* 973 F.Supp.2d 344, 361 (S.D.N.Y.2013). First, the IHO and SRO both determined, upon a full record, that the IEP adequately addressed S.'s "hyperactivity and attention problems" by recommending "directions repeated and clarified, repetition, repetitive texts, gentle reminders, a graphic organizer, and visual supports" that had been "successful[ ]" with S." (J.A. Ex. II at 22; J.A. Ex. I at 9.) Any "[f]ailure to conduct an FBA ... does not render an IEP legally inadequate under the IDEA so long as the IEP adequately ... implements strategies to address that behavior." *M.W.,* 725 F.3d at 140. "[W]hether an IEP adequately addresses a disabled student's behaviors and whether strategies for dealing with those behaviors are appropriate are precisely the type of issues upon which the IDEA requires deference to the expertise of the administrative officers." *Id.* (internal quotation marks and brackets omitted).

Second, the IHO and SRO rejected Plaintiffs' contention that Pelham should have "consider[ed] ... a continuum of educational programs" during the June 19, 2013 IEP meeting and that its failure to do so "significantly impeded the parents' opportunity to participate in the decision-making process." (Pls.' Mem. at 18–19; *see* J.A. Ex. II at 23; J.A. Ex. I at 9.) Pelham's Committee on Special Education "was obligated to recommend an appropriate placement," and it did so. *A.D. v. New York City Dep't of Educ.,* 2013 WL 1155570, at *8 (S.D.N.Y. Mar. 19, 2013). "Therefore, once the [Committee on Special Education] determined that [the placement] would be appropriate for the Student, it ... did not need to inquire into more ... options." *Id.*

 Moreover, the Parents and their educational expert, Dr. Soifer, had "meaningful input" at the June 19, 2013 IEP meeting. (J.A. Ex. II at 23.) Dr. Soifer testified at the hearing that Pelham educators discussed S.'s draft 2013–14 IEP with Plaintiffs, answered Plaintiffs' and Dr. Soifer's questions, and incorporated Dr. Soifer's suggestion to add "decoding" reading goals to the IEP at the June 19, 2013 IEP meeting. (Tr. at 1160:16–22, 1167:12–1168:3, 1180:25–1184:25.) "School districts are permitted to come to the IEP meeting with a draft IEP as long as it has not been finalized and the district is still open to changes based on the parents' participation." *S.W. v. New York City Dep't of Educ.*, 92 F.Supp.3d 143, 156 (S.D.N.Y.2015). "The IDEA grants parents the right to provide input, not to have veto power." *Id.* at 157.

Third, there is record support for the IHO's and SRO's findings that S. did not require an elevator. *M.L. v. New York City Dep't of Educ.*, 2014 WL 1301957, at *12 (S.D.N.Y. March 31, 2014); (*see* J.A. Ex. II at 15; J.A. Ex I. at 9). S.'s 2011–12 teacher testified that S. no longer needed a safety monitor because he "was really navigating his environment ... well .... [and] would climb stairs." (Tr. at 309:3–12.)

The Court concludes that the 2013–14 IEP was both procedurally and substantively adequate. The Court need not reach Plaintiffs' claims regarding the propriety of their unilateral private school placement. *R.B.*, 15 F.Supp.3d at 437. "Regardless of the adequacy of that [private] school, the [Defendant] need not reimburse Plaintiffs for tuition." *Id.*

### (2) Plaintiffs Waived Any Claim for the 2012–13 School Year

 Plaintiffs argue that their "claim for 'compensatory' relief was adequately pleaded in the Due Process Complaint" and "the SRO failed to recognize the viability of Plaintiffs' compensatory education claim" for the 2012–13 school year. (Pls.' Mem. at 7–8 (capitalization omitted).) Plaintiffs contend that because speech and occupational therapy sessions were missed in 2012–13, S. was deprived of a FAPE. (Compl. at 4, 9.) In the alternative, Plaintiffs contend that the Defendant " 'opened the door' to the compensatory education claim" for 2012–13 by entering Exhibit 80 ("Data and Notes by Ms. Altieri") into evidence. (Pls.' Mem. at 10–11.) They also state that "Plaintiff[s] elicited during cross examination of the speech witness that Pelham failed to meet [S.'s] IEP speech services mandate for the 2012–2013 school year" and "[a]fter that testimony, plaintiffs subpoenaed [S.'s] occupational therapist." (Compl. at 4.)[9]

---

**9.** It does not appear that the Defendant adduced testimony about missed sessions. On direct examination, the Defendant's counsel asked Amanda Altieri, Pelham's speech therapist, to identify Defendant's Exhibit 80 ("Data and Notes by Ms. Altieri"). (Tr. at 661:2–664:22.) Altieri testified: "This is my method for tracking data and also writing down the activities that I do with children based on their individual IEP goals.... I used this in order to determine [S.'s] progress toward his IEP goals." (*Id.* at 661:2–662:10.) She stated that Exhibit 80 reflected, among other things, when S. "needed redirection to the task" and "visual reminders" and when Altieri needed to "repeat" or "clarify" tasks to S. (*Id.* at 662:2–664:5.) Exhibit 80 was admitted into evidence as "the speech and language data towards goals." (*Id.* at 664:8–19.)

After the Defendant's counsel concluded direct examination of Altieri, Plaintiffs' counsel, Tracey Spencer Walsh, questioned Altieri on cross examination about Defendant's Exhibit 80. (*Id.* at 702:6–705:9.) Plaintiffs' counsel asked a series of questions about Altieri's "progress notes ... where it says a speech session was canceled." (*Id.* at 702:6–10.) Also, Plaintiffs' counsel called Kim Talmor, who had been S.'s occupational therapist at Pelham, as a witness. (Id. at 1521:8–1527:17, 1687:13–1701:7.) On direct examination of Ms. Talmor, the following colloquy occurred:

The Defendant counters that Plaintiffs did not plead in their Due Process Complaint that Pelham's services in the 2012–13 IEP deprived S. of a FAPE for the 2012–13 school year. (Def.'s Mem. at 4–5.)[10] And, the Defendant contends it did not "open[ ] the door" to Plaintiffs' claim for 2012–13 missed sessions because it "did not raise these issues in the first instance at the impartial hearing."[11] (Id. at 7 n.1.)

The Court finds that Plaintiffs' Due Process Complaint made no mention of the Defendant's alleged failure to provide a FAPE and/or of missed sessions in 2012–13. (See J.A. Ex. P–A.) It did not give "fair notice" of a claim for the 2012–13 school year. The "catchall" language employed by Plaintiffs (see supra pp. 670 n. 2, 671, 673 n. 5) in the Due Process Complaint—i.e. "[f]or the 2013–2014 school year . . . a compensatory education award for any and all educational services [S.] was entitled to but did not receive" (J.A. Ex. P–A at 10)—did not provide notice of a claim for missed speech and occupational therapy sessions during the 2012–13 school year. The Due Process Complaint on its face is confined to Plaintiffs' claims for the 2013–14 school year. (Id. at 2, 9, 10.)

As indicated above, the opening paragraph of the Due Process Complaint "request[ed] a due process hearing . . . to adjudicate . . . relief . . . pertaining to the 2013–2014 school year." (Id. at 2.) It did not request relief for the 2012–13 school

year. In the section of the Due Process Complaint captioned, "The Problem," Plaintiffs stated that "[p]rocedurally and substantively, [Pelham] deprived [S.] of a FAPE . . . for the 2013–2014 school year." (Id. at 9.) Similarly, the Due Process Complaint's "Proposed Solution" section stated: "For the 2013–2014 school year, the reimbursement, compensatory and/or prospective funding award should cover . . . tuition and costs for placement at Children's Academy . . . [and] a compensatory education award for any and all educational services [S.] was entitled to but did not receive." (Id. at 10.) In comparable cases, courts have found (new) claims were waived. See S.H. ex rel. W.H. v. Eastchester Union Free School Dist., 2011 WL 6108523 at *6 n. 3 (S.D.N.Y. Dec. 8, 2011) (where "the administrative proceeding under review does not contain a claim with respect to the 2007–08 school year"); S.A. ex rel. M.A.K. v. New York City Dep't of Educ., 2014 WL 1311761, at *3, 17 (E.D.N.Y. March 30, 2014) (where the plaintiffs' claim for the 2010 summer session was not raised in the amended due process complaint); N.S. v. New York City Dep't of Educ., 2014 WL 2722967, at *4 & n. 10, 7 n. 13 (S.D.N.Y. June 16, 2014) ("[T]he parents waived arguments related to . . . the appropriateness of IEP's staffing ratio" where the due process complaint's "reserv[ation of] the right to challenge . . . staffing ratios" was "a

---

[Walsh]: [W]ere there ever times, Ms. Talmor, where services, for various reasons, would not be able to be delivered according to the IEP mandate?

[Talmor]: There could have been a time, yes.

[Walsh]: Okay. And under what types of circumstances would you not give S.—

[Talmor]: If there were school trips scheduled, number one. We had Hurricane Sandy, and we lost some time during Hurricane Sandy. At the end of the year we have our end-of-the-year meetings.

(Id. at 1522:18–1523:3.)

10. At oral argument, the Defendant's counsel pointed out that the Due Process Complaint alleged "deprivations in the '13/14 school year." (1/26/16 Hr'g Tr. at 24:24–25.) She stated: "The only thing [Pelham has] to go by when determining how to present our case . . . is the notice we're provided in the request for due process," and "I did not think I needed to defend the '12/13 school year also [during the hearing], and that really is the crux of the argument." (Id. at 22:5–8, 25:3–5.)

11. See supra p. 679-80 n. 9.

form provision that the parent advocate attaches to all [due process complaints]").[12]

Plaintiffs, as noted above, had the option to raise a claim for the 2012–13 school year by submitting a separate due process complaint. See *supra* p. 673 n. 4; *see also* 8 N.Y.C.R.R. § 200.5(j)(3)(ii)(a). The Court is unpersuaded by Plaintiffs' contention that such a supplemental filing "would have prejudiced the parents, because we would then, in the middle of our hearing, have to stop and start up a whole new due process, which ... would come with another 30–day resolution period and all the other delays." (1/26/16 Hr'g Tr. at 27:16–20; *see also* Pls.' Reply at 3.) The nine-day due process hearing took place over six months, which would appear to have been sufficient time for Plaintiffs to prepare a supplemental due process complaint with counsel. See *G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.*, 751 F.Supp.2d 552, 566–67 (S.D.N.Y.2010); *M.C. v. Katonah/Lewisboro Union Free School Dist.*, 2012 WL 834350, at *5–6 (S.D.N.Y. Mar. 5, 2012).

Nor did the Defendant open the door to Plaintiffs' belated claim for the 2012–13 school year. See *B.M. v. New York City Dep't of Educ.*, 569 Fed.Appx. 57, 59 (2d Cir.2014) (summary order); *A.M. ex rel. Y.N. v. New York City Dep't of Educ.*, 964 F.Supp.2d 270, 283 (S.D.N.Y.2013); *Scott ex rel.C.S. v. New York City Dep't of Educ.*, 6 F.Supp.3d 424, 438–39 (S.D.N.Y. 2014); *J.C.S. v. Blind Brook–Rye Union Free School Dist.*, 2013 WL 3975942, at *9 (S.D.N.Y. Aug. 5, 2013). As noted *supra* p. 679–80 n. 9, it was Plaintiffs who raised

the subject of 2012–13 missed sessions during their cross examination of the Defendant's witness, Amanda Altieri, and during their direct examination of Plaintiffs' own witness, Kim Talmor. (Compl. at 4; Tr. at 702:6–705:9, 1521:8–1527:17, 1687:13–1701:7.) "[T]his case is a far cry from *M.H.*, where the [defendant] raised the disputed issue." *A.M.*, 964 F.Supp.2d at 283 (citing *M.H.*, 685 F.3d at 250–51).

Assuming, *arguendo*, that Plaintiffs had not waived their claim for the 2012–13 school year, the Court would likely agree with the IHO's conclusion that the missed sessions of speech and occupational therapy did not deny S. a FAPE. *C.F.*, 746 F.3d at 77 ("[C]ourts should defer to the IHO's analysis when considering an issue not reached by the SRO."); *see also supra* pp. 676-77. Pelham's 2012–13 Progress Report documented that, out of four "speech/language" goals in S.'s 2012–13 IEP, S "achieved" one goal, he was "progressing satisfactorily" toward two other goals, and he was "progressing gradually" toward a fourth goal. (J.A. Ex. P–X at 6–7.) Out of four occupational therapy goals, S. was "progressing satisfactorily" toward two goals and he was "progressing gradually" toward two goals. (*Id.* at 10–11; J.A. Ex. D-1; Tr. 1518:5–1519:10.) S.'s occupational therapy evaluation reflected that he "show[ed] strong progress with his keyboarding skills" (J.A. Ex. P–C at 8) and he was completing nearly "all self-help skills independently" (*id.*; J.A. Ex. D–1). See, e.g., *A.P. v. Woodstock Bd. of Educ.*, 370 Fed.Appx. 202, 205 (2d Cir. 2010) (summary order) (where "the record evidence

---

**12.** Plaintiffs' reliance in their Reply brief on the case of *C.F.* is misplaced. (Pls.' Reply at 2 (citing *C.F.*, 746 F.3d at 78)). In *C.F.*, the Second Circuit Court of Appeals determined that plaintiffs provided "fair notice" to the defendant of their claim concerning the lack of availability of a proposed school site at the start date of the student's placement, because

their due process complaint stated that a "specific and identifiable placement was not timely." *Id.* The Court stated: "The allegation that [the defendant] had failed to provide a specific and identifiable placement in a timely manner surely encompasses the claim that the placement was not timely because the designated school site was unavailable." *Id.*

demonstrates that [the student] made improvements throughout his sixth-grade year"); *S.H.*, 2011 WL 6108523 at *6 n. 3 ("the Court agrees with the SRO's finding that the record shows that [the student] made social and emotional progress ... despite the fact that [the student] did not receive all of his regularly scheduled counseling sessions"); *S.A.*, 2014 WL 1311761, at *18 ("Even if the record reflected that [the defendant] failed to provide all of the services to which the student was entitled during the summer, the deprivation did not violate his right to a FAPE because the record reflects that he made progress over the summer.")

And assuming, *arguendo*, that Plaintiffs' 2012–13 claim had not been waived, the missed sessions likely would not have resulted in a denial of FAPE to S. for the 2012–13 school year, and compensatory education relief would be unwarranted. *See, e.g., French v. New York State Dep't of Educ.*, 476 Fed.Appx. 468, 472 (2d Cir. 2011) (summary order) ("[The defendant] cannot be said to have deprived [the student] of a FAPE ... and [the student] is therefore not entitled to the prospective equitable remedy of compensatory education"); *L.O. v. New York City Dep't of Educ.*, 94 F.Supp.3d 530, 571 (S.D.N.Y. 2015) ("Because this Court concludes that ... the [defendant] provided [the student] with a FAPE ..., Plaintiff's request for compensatory educational services is denied.").

## IV. Conclusion & Order

For the reasons set forth above, Plaintiffs' motion for summary judgment [# 18] is denied and judgment is entered for the Defendant. It is respectfully requested that the Clerk close this case.